UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM ROBERT SHADE, | ) | CASE NO. 1:23-cv-02194 |
| | ) | |
| Plaintiff, | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| | ) | |
| v. | ) | |
| | ) | |
| COMMISSIONER OF | ) | **MEMORANDUM OPINION** |
| SOCIAL SECURITY, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

Before the Court is the Report and Recommendation of Magistrate Judge Carmen E. Henderson ("R&R") recommending the Commissioner of Social Security's ("Defendant") decision be affirmed. (Doc. 10.) Plaintiff William Shade ("Plaintiff") timely filed objections (Doc. 11), and Defendant filed a response (Doc. 12).

For the following reasons, Plaintiff's objections are OVERRULED, the R&R is ACCEPTED and ADOPTED, and the final decision of the Commissioner is AFFIRMED.

**I.     BACKGROUND**

**A.     The Record Before the ALJ**

Plaintiff stated no objection to either the factual record or procedural history set forth in the R&R. (*See* Doc. 11.) Notwithstanding, the Court summarizes the facts pertinent to evaluating Plaintiff's objections.

Plaintiff alleged a disability onset in December 2019 due to a combination of impairments, including type II diabetes with neuropathy. (Doc. 6 at 40.)[1] He also reported a history of meralgia paresthetica resulting in left thigh numbness. Plaintiff was referred to a neurologist who evaluated him in October 2021. (*Id.* at 50.) Plaintiff reported symptoms to the neurologist who noted he had polyneuropathy superimposed on "most likely bilateral meralgia paresthetica." (*Id.* at 1292.) The neurologist ordered an ultrasound of Plaintiff's thigh. (*Id.* at 1293.) The ultrasound was performed in December 2021. (*Id.* at 1294.) The ultrasound found that "[t]here is no evidence of abrupt caliber change or adjacent pathology along the studied course of the lateral femoral cutaneous nerve on either side." (*Id.*) In short, the ultrasound found no evidence of meralgia paresthetica.

The Administrative Law Judge ("ALJ") reviewed the evidence relating to Plaintiff's impairments and found no disability. (*Id.* at 61.) As relevant here, the ALJ did not consider meralgia paresthetica in rendering its conclusion but did consider Plaintiff's neuropathy. (*Id.* at 45, 50.) As it relates to Plaintiff's neuropathy, the ALJ discussed the reported neuropathy symptoms, corresponding medical examination and testing, and potential treatment. (*Id.* at 50, 55.)

### B. Procedural History

On August 26, 2020, Plaintiff filed an application for Disability Insurance Benefits, alleging an onset date of December 22, 2019. (*Id.* at 40.) The Commissioner denied the application, and Plaintiff requested a hearing before an ALJ. (*Id.*) On May 12, 2022, the ALJ held a hearing. (*Id.*) During the hearing, Plaintiff was represented by counsel and the ALJ heard

---

[1] For ease and consistency, record citations are to the electronically stamped CM/ECF document and PageID# rather than any internal pagination.

testimony from an impartial vocational expert. (*Id.*) On June 17, 2022, the ALJ found Plaintiff was not disabled. (*Id.* at 40–61.) The Appeals Council declined to review Plaintiff's case and the ALJ's decision became final on September 18, 2023. (*Id.* at 26.)

On November 10, 2023, Plaintiff commenced this action. (Doc. 1.) On February 20, 2024, he filed his brief on the merits. (Doc. 7.) On March 15, 2024, Defendant filed a brief on the merits (Doc. 8) and on March 29, 2024 Plaintiff filed his reply (Doc. 9). On June 13, 2024, the Magistrate Judge issued her R&R recommending the Court affirm the Commissioner's final decision. (Doc. 10.) Plaintiff filed timely objected. (Doc. 11.)

## II. STANDARD OF REVIEW

A district court "shall make a *de novo* determination of those portions or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C) (flush language); *see Powell v. United States*, 37 F.3d 1499 (Table), 1994 WL 532926, 1994 U.S. App. LEXIS 35044, *1 (6th Cir. Sept. 30, 1994) ("Any report and recommendation by a magistrate judge that is dispositive of a claim or defense of a party shall be subject to *de novo* review by the district court in light of specific objections filed by any party.") (citations omitted). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C) (flush language).

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The impairment must prevent the claimant from doing the claimant's previous work, as well as any other work which exists in significant numbers in the region where the individual

lives or in several regions of the country. 42 U.S.C. § 423(d)(2)(A). In making a disability determination, an ALJ engages in a five-step sequential evaluation:

1. If the claimant is doing substantial gainful activity, he is not disabled.

2. If the claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled. To be severe, the claimant must have a severe medically determinable physical or mental impairment, or a combination of impairments, that must have lasted or be expected to last for at least 12 months, unless it is expected to result in death.

3. If the claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment in Appendix 1 to Subpart P of Part 404, the claimant is presumed disabled without further inquiry.

4. If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if the claimant's impairment prevents him from doing past relevant work. If the claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. If the claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520, 416.920; *see also Quisenberry v. Comm'r of Soc. Sec.*, 757 F. App'x 422, 426 (6th Cir. 2018) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997)).

During the first four steps, the claimant has the burden of proof. *Walters*, 127 F.3d at 529. The burden shifts to the Commission at step five. *Id.*

The Court's review of the Commissioner's decision to deny benefits is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010). "Substantial evidence is 'more than a scintilla of evidence but less than

a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *McGlothin v. Comm'r of Soc. Sec.*, 299 F. App'x 516, 521 (6th Cir. 2008) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal citation omitted)). If substantial evidence supports the Commissioner's finding the claimant is not disabled, that finding must be affirmed even if the reviewing court would decide the matter differently. *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citation omitted).

A reviewing court may not resolve conflicts in evidence or to decide questions of credibility. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) (citation omitted). The Commissioner's decision must be affirmed even if the claimant's position is also supported by substantial evidence. *Wallace v. Comm'r of Soc. Sec.*, 221 F.3d 1337 (6th Cir. 2000) (unpublished table decision) (citing *Casey v. Sec'y of Health and Hum. Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993)).

### III. ANALYSIS

**A. Plaintiff's First Objection: The Court should decline to adopt the Magistrate Judge's conclusion that the lack of proof regarding the label of meralgia parenthetica [sic] was sufficient to find Plaintiff's neurologic condition not medically determinable.**

Plaintiff asserts the ALJ failed to account for his severe impairment of meralgia paresthetica because the ALJ inappropriately found the condition was indeterminable. (Doc. 11 at 1985.) He also argues the ALJ could not properly consider meralgia paresthetica because neither of the opining sources mentioned meralgia paresthetica, something Plaintiff argues the opining sources missed in his medical records. (*Id.*) Thus, according to Plaintiff, meralgia paresthetica was not duly assessed by the ALJ. (*Id.* at 1998.) Continuing, Plaintiff asserts the record supports the finding his meralgia paresthetica could be determined, even if he never

received a formal diagnosis. (*Id.*) To Plaintiff, meralgia paresthetica as a disabling condition remains an open question. (*Id.*)

A medically determinable impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques" and "must be established by objective medical evidence from an acceptable medical source." 20 C.F.R. § 404.1521. An impairment is medically determinable based on objective medical evidence alone. *Id.* at § 404.1521. Objective medical evidence includes "signs" and "laboratory findings," not diagnoses, medical opinions, or self-reported symptoms. *Id.* at §§ 404.1502(f), 404.1521.

To support his argument that this impairment can be determined, Plaintiff cited to his own testimony at the hearing and a physician's note from an October 2021 visit. (Doc. 10 at 1987–88.) During that visit, Plaintiff reported loss of sensation, numbness, tingling, and falling. (*Id.* at 1988.) The physician noted the symptoms were "mostly likely" from meralgia paresthetica. (*Id.*) Based on this record alone, meralgia paresthetica was not medically determinable because it was a possible diagnosis not supported by any objective medical evidence. *See Baker v. Berryhill*, No. 16-165, 2017 WL 1424898, 2017 U.S. Dist. LEXIS 60114, at *6–7 (E.D. Ky. Apr. 20, 2017) (no medically determinable impairment where rheumatoid arthritis diagnosis was possible but not confirmed by objective evidence). There is no objective medical evidence before the Court supporting meralgia paresthetica as a medically determinable impairment. Because the record does not support a finding that meralgia paresthetica was medically determinable, the ALJ did not need to further consider the condition. *Steele v. Comm'r of Soc. Sec. Admin.*, No. 21-cv-1226, 2023 WL 2560817, 2023 U.S. Dist.

LEXIS 45843, *61 (N.D. Ohio Mar. 17, 2023) (an ALJ "need not consider the impact of non-medically determinable impairments").

> B. **Plaintiff's Second Objection: The Court should decline to adopt the Magistrate Judge's conclusion that the evidence of record was insufficiently complex to find that the ALJ erred in not further developing the record.**

Plaintiff argues his consultation with a neurologist in October 2021, subsequent testing concerning neuropathy, and his testimony at the hearing all amount to a critical body of evidence requiring further consideration. (Doc. 11 at 1999.) This evidence, Plaintiff urges, was sufficiently complex and not open to a lay person's interpretation. (*Id.*) Therefore, the ALJ should have developed the record by obtaining further medical opinions. (*Id.*)

In *Gonzales v. Comm'r of Soc. Sec.*, the court explained:

> [I]n some circumstances, an ALJ is required to obtain a medical opinion in furtherance of her 20 CFR § 404.1545(a)(3) responsibility to develop the record. Such a circumstance exists where the medical evidence requires the ALJ to make medical judgments of a claimant's functional abilities by interpreting raw medical data. Also, a medical opinion is necessary where a critical body of the objective medical evidence is not accounted for by a medical opinion and there is significant evidence of potentially disabling conditions. At such times, the ALJ should develop the record by obtaining opinion evidence that accounts for the entire relevant period.

No. 21-cv-93, 2022 WL 824145, 2022 U.S. Dist. LEXIS 49168, *23 (N.D. Ohio Mar. 18, 2022) (quotations and citations omitted). In *Gonzales*, the court found the ALJ should have developed the record further where the medical evidence that went unconsidered included multiple x-rays and seven months of medical records following a knee replacement and recovery. *Id.* at *9. However, in this case, Plaintiff contends a single October 2021 neurology visit and subsequent test, along with his testimony, amounts to a critical body of evidence that warrants further development of the record. (Doc. 11 at 1999.) That evidence is not comparable to the evidence that supported further development of the record in *Gonzales*. These few pieces of evidence are

not a "critical body of evidence" that would require a medical opinion or further development of the record.

Moreover, there is no raw medical data for the ALJ to interpret, nor is there medical evidence unaccounted for by a medical opinion. ALJs are "generally unqualified to interpret raw medical data and make medical judgments concerning the limitations that may reasonably be expected to accompany such data." *Phelps v. Comm'r of Soc. Sec.*, No. 21-cv-02295, 2022 WL 18395824, 2022 U.S. Dist. LEXIS 236032, *30 (N.D. Ohio Nov. 15, 2022) (citations omitted). But here, Plaintiff only points to the neurology visit in October 2021. In the physician notes, the physician stated "[t]he exam and clinical history are most consistent with a distal symmetric sensory predominant polyneuropathy . . . [s]uperimposed on this diabetic polyneuropathy is most likely bilateral meralgia paresthetica[.]" (Doc. 6 at 1292.) The resulting ultrasound, which was negative for meralgia paresthetica, did not require any interpretation of raw medical data. There was no raw medical data the ALJ had to interpret.

IV. **CONCLUSION**

For the reasons stated above, Plaintiff's objections are OVERRULED, the R&R is ACCEPTED and ADOPTED, and the Commissioner's final decision is AFFIRMED.

**IT IS SO ORDERED.**

Date: February 24, 2025

BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE